## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL PERRY, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 20-CV-843 |
| ST. FRANCOIS COUNTY, DENNIS W. ) | |
| SMITH, DANIEL BULLOCK, ) | ACTION FOR DAMAGES |
| CHARLES PEWITT, JOHN DOEs 1-5, ) | |
| DEPUTY JANE DOE, and HEATHER ) | JURY TRIAL DEMANDED |
| KATHERINE SMITH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

1. This is a civil action arising under 42 U.S.C. §1983 for violations of plaintiff Michael Perry's Fourteenth Amendment rights.

## JURISDICTION

2. This case arises out of severe injuries suffered by Michael Perry on or about May 16, 2020, while being held as a pretrial detainee in the St. Francois County Jail in the City of Farmington, St. Francois County, Missouri.

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and §1341(3) because this Complaint alleges violations of 42 U.S.C. §1983.  This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. §1367.

## VENUE

4. Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in St. Francois County, Missouri, which is located in the U.S. District Court, Eastern District of Missouri, Eastern Division.

## THE PARTIES

5.  Plaintiff Michael Perry is a citizen of Missouri.

6.  Defendant St. Francois County ("County")  is a political subdivision of the State of Missouri and is a person for purposes of a 42 U.S.C. §1983 action for damages.

7.  Defendant Dennis W. Smith, at all times relevant herein, is a natural person who was the St. Francois County Jailer working under the direction of Defendant St. Francois County in the Sheriff's Department.

8.  Defendant Sheriff Daniel Bullock, at all times relevant herein, is a natural person who was the elected St. Francois County Sheriff and responsible for maintaining the jail and overseeing its day to day operations of the jail and its employees.

9.  Defendant Charles Pewitt, DO, at all times relevant herein, is a natural person who is a licensed medical doctor and the primary care physician for St. Francois County Jail.

10.  Defendants Deputies John Doe 1-5 and Deputy Jane Doe, at all times relevant herein, are natural persons who were employed at the St. Francois County Jail and working under the direction and control of Defendants Smith and Sheriff Dan Bullock.

11.  Defendant Heather Katherine Smith, at all times relevant herein, is a natural person who was employed or hired by the St. Francois County Sheriff's Department, St. Francois County, and Sheriff Bullock as a Licensed Practical Nurse and was involved in the medical care provided to Plaintiff Michael Perry, as further explained herein.

12.  At all relevant times set forth herein, Defendant Smith, Nurse Smith, Bullock, John Does 1-5, Jane Doe, and Dr. Pewitt acted under color of the laws, statutes,

ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States.

## INTENTIONAL WAIVER OF SOVEREIGN IMMUNITY

13. Upon information and belief, at all relevant times, the County had purchased and had in effect a policy of insurance to insure itself and the Sheriff's Department against claims or causes of actions for damages caused by its employees engaged in government functions, including the tort and civil rights violations described herein.

14. The purchase of insurance constitutes an intentional waiver of sovereign immunity by the County and its covered officers and employees for all of Plaintiffs' claims.

15. Upon information and belief, the policy does not preclude or prevent waiving sovereign immunity as a condition of its issuance, or as a contractual obligation.

## FACTS

16. On or about March 16, 2020, Michael Perry ("Plaintiff" or "Michael"), a 44 year old union carpenter, was arrested and taken to the St. Francois County Jail ("jail") after suffering a broken fibula in an assault by four men.

17. Michael is a Type 1 insulin-dependent diabetic who required constant glucose level monitoring and no less than three insulin injections per day.

18. At the time Michael was brought to the jail, he told Deputy John Doe #1 and Deputy Jane Doe that he had a broken leg, showed them his leg, which was clearly bruised and swollen to twice the size of his uninjured leg, and told them he was unable

to walk.  Despite his obvious and severe injury, he was not seen by Dr. Pewitt or Nurse Smith,  nor was he taken to the hospital.

19. Michael also told the jailers that he was a Type 1 insulin-dependent diabetic who needed regular insulin shots.

20. Michael, during his 24-hour stay at the jail, showed his injured leg to Deputies John Doe 1-5 and Deputy Jane Doe. He begged them for medical treatment for his leg. His cellmates begged the deputies for medical treatment on Michael's behalf. Michael was forced to crawl around the filthy floor of the cell and could not stand to use the toilet, which was readily observable by his cellmates as well as the deputies. Each and every time the deputies were informed of Michael's need for medical care, the deputies responded, "You're gonna have to talk to the nurse and she ain't here."

21. Each time Michael was brought a meal, he informed Deputies John Does 2-5 that his insulin dependency required him to have a blood glucose test and a precise measurement of insulin to counteract the effects of the food. He was ignored at breakfast, and he did not eat breakfast. When this conversation was repeated at lunch, a deputy contacted Nurse Smith, who instructed Deputy John Doe #3 to consult a chart in her office and draw the indicated amount of insulin to administer to Michael. When Michael was given the needle, which is specially designed for jail use, he did not notice until after he began to administer the shot that the plunger was mostly filled with air, and he argued with the deputy about giving him such a dangerous shot.

22. When it was time for the evening meal, Michael had the same conversation about being insulin dependent and having a broken leg and showed his leg to the deputies. After being told again – just as at his arrival, breakfast, and lunch, that he had to see the nurse "and she ain't here," Deputies Does  #3 and 4 placed Michael in a

wheelchair and brought him to the nurse's office, where they consulted a chart, handed him the syringe and a bottle of insulin, and told him how much to draw from the bottle. Michael, who had been giving himself diabetic injections since age 10, informed the deputies that they were using the wrong chart and needed to use the "carb count" chart to account for the meal he was about to receive, but the deputies refused to do anything but order him to inject the amount they told him to take or receive nothing.

23. After being held for 24 hours, Michael was removed from the cell. Deputy John Doe #5 opened the cell and watched Michael crawl out with his blanket and floor mat. Deputy Doe #5 watched Michael crawl to the designated site to return the mats, and thereafter placed Michael in a chair for transport to the location where Michael's fingerprints and picture were taken.

24. Upon the completion of processing, Michael was wheeled to the exit by the deputy. The deputy instructed Michael to return his jail-issued shirt and wheelchair. Michael was sent out the door, where he sat on the curb, making numerous phone calls for transportation in the midst of the COVID-19 quarantine. Unable to obtain transportation, Michael hobbled approximately two miles on his broken leg to a friend's house.

25. Michael sought treatment at Parkland Hospital in Bonne Terre, which immediately referred him to a Level 1 trauma center in St. Louis. Michael's leg was so swollen that the surgeon could not operate for two weeks while he waited for the swelling to decrease. Michael ultimately received titanium screws and plates in his leg and is waiting to see whether the repairs will take or whether his diabetic condition will cause his body to reject the implants, which could lead to amputation of his leg.

26. Nurse Smith works eight hours per day as a Licensed Practical Nurse at the County jail, but only from Monday to Friday during normal business hours despite being aware that she is the only medical person who works on-site at the facility.

27. Nurse Smith did not conduct a medical examination of Michael before prescribing an insulin dose that was different from the dose Michael receives under the care of his regular doctor. Nor was Nurse Smith, with her LPN license, qualified to treat Michael's diabetes, much less instruct the deputies to change the dosage, without the direct supervision of a medical doctor, nurse practitioner, or registered nurse.

28. Pewitt did not participate in the care of Michael and did not put into place any policies or procedures for providing medical treatment at the jail on evenings and weekends when medical care is likely to be needed.

29. Defendants Deputies John Does 1-5 and Deputy Jane Doe did not contact Pewitt or call 911 to get Michael appropriate medical treatment for his diabetes or his broken leg.

30. Defendant Deputy John Does 3-5 are not medically qualified to determine what amount of insulin Michael should have received.

31. The failure of the Defendants John Doe 1-5, Jane Doe, and Nurse Smith to seek immediate medical evaluation and treatment for him was clearly an inadequate response to Michael Perry's obvious medical needs.

32. It has been clearly established since at least 2008 in the Eighth Circuit that a pretrial detainee has a right to be free from deliberate indifferent denials to emergency medical care. *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016).

33. Defendants John Doe 1-5, Jane Doe, and Nurse Smith were either personally aware from direct observation or advised at some point during the weekend of May 16, 2020 that Michael Perry needed medical intervention and treatment.

34. Anyone witnessing Michael's condition at the jail would have recognized he needed medical attention and yet Defendants John Doe 1-5, Jane Doe, Nurse Smith, and Pewitt did nothing to provide such assistance.

35. It is obvious to any reasonable person that if a person is crawling around, unable to walk, with a leg that is twice as swollen as the other, that it is medically necessary to provide medical care to that person.

36. As part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), Defendants, acting pursuant to the Sheriff's Department's policy, do not provide medical personnel to evaluate detainees for medical issues on evenings and weekends.

37. As part of the Sheriff's Department policy (whether written, unwritten or simply custom and practice), no trained medical personnel are present on evenings and weekends at the St. Francois County Jail to administer medications to inmates on evenings and weekends.

38. By not having medical personnel present on evenings and weekends, the County saves money.

39. The denial of medical treatment for Michael's obvious, serious medical needs violated his right to due process under the Fourteenth Amendment.

40. Given the above information known to Defendants John Doe 1-5, Jane Doe, and Nurse Smith, they had more than enough information, even as lay persons, to easily recognize the necessity of immediate medical evaluation and intervention on

behalf of Michael Perry, but they deliberately and intentionally disregarded his medical needs.

41.   Had Michael been referred to a doctor or the emergency room the night he was brought to the jail, he would have received immediate medical treatment and likely would have not needed costly Level 1 Trauma surgery.

42.   Had the jail provided someone other than a Licensed Practical Nurse who did not have the appropriate licensing and legal permissions to examine, diagnose, and prescribe treatment and medications to detainees, then Michael would have received appropriate and immediate medical treatment during his stay at the jail.

43.   Had Smith, Pewitt, and St. Francois County provided proper training and resources to its staff, Michael would have received appropriate and immediate medical treatment during his stay at the jail.

## COUNT I

**(VIOLATION OF 42 U.S.C. § 1983 FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS)**
**(AGAINST DEFENDANTS PEWITT, SMITH, BULLOCK, JOHN DOES 1-5, JANE DOE, NURSE SMITH)**

44.   Plaintiff incorporates the above paragraphs.

45.   Defendants had a duty under 42 U.S.C. §1983 and the Fourteenth Amendment to provide Michael, a pre-trial detainee, with appropriate medical treatment for his serious medical needs.

46.   Defendants knew that Michael required medications to treat his diabetes and treatment for his obviously injured and broken leg.

47. Defendants failed and refused to provide adequate medical intervention and treatment, causing Michael to suffer and crawl around the jail with a broken leg and to be deprived of insulin for his Type 1 diabetes.

48. Defendants knew that Plaintiff Perry was in danger of serious, immediate, and proximate harm from complications of a broken leg and untreated type 1 diabetes if he did not receive the proper medication and treatment.

49. Defendants acted with deliberate indifference to Michael's serious medical needs, which exacerbated his leg injury and caused him severe pain and suffering.

50. The pain, suffering, and level 1 trauma surgery required by Michael was the direct and proximate result of the deliberate indifference to his medical needs.

51. Defendants' behavior as described in this and every Count of this Complaint shocks the conscience.

52. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against all named Defendants, in each of their individual capacities.

53. The actions and failures to act of all named Defendants were willful, wanton, malicious, or with complete reckless indifference to, or conscious disregard for, the rights of Plaintiff Perry.

54. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of exemplary or punitive damages against all named Defendants, in their individual capacities, so as to punish the Defendants and deter others from acting in a similar manner.

55. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney fees and costs incurred in bringing this action.

## COUNT II

### (MONELL LIABILITY UNDER 42 U.S.C. § 1983: CUSTOM AND PRACTICE AND FAILURE TO SUPERVISE AND TRAIN) (AGAINST THE COUNTY AND PEWITT)

56. Plaintiffs incorporate the above paragraphs.

57. Defendants County and Pewitt all had a duty to train their employees to recognize when a pretrial detainee needs medical evaluation. *Yellow Horse v. Pennington Cty.*, 225 F.3d 923, 928 (8th Cir. 2000). Defendants had a duty to train its employees on how to recognize serious medical needs and how to obtain immediate medical care for pretrial detainees.

58. Defendants had a custom and practice of not providing detainees with access to medical care during evenings and weekends and not providing medical staff on evenings and weekends.

59. Defendants failed to provide their staff with the appropriate training to recognize when medical evaluation or intervention is necessary.

60. The County and the jail have a custom and practice of not staffing medical personnel on evenings and weekends to save money.

61. Defendant Pewitt, as the jailhouse primary care physician, has a duty to ensure that adequate medical care is provided after business hours and on weekends.

62. By failing to train the evening and weekend staff on recognizing when a pretrial detainee needs medical treatment, and by failing to provide staff that have those skills, the County and Pewitt violated 42 U.S.C. 1983.

63. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory and punitive damages against Defendants County, Sheriff, Smith, and White.

64. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney fees and costs incurred in pursuing this action.

**COUNT III**
**(NEGLIGENCE)**
**(AGAINST THE COUNTY)**

65. Plaintiffs incorporate the above paragraphs.

66. The County had a duty to provide adequate medical care to detainees at the jail, including Michael.

67. The County breached this duty by: (1) failing to enact policies and procedures for the provision of medical care to detainees, including emergency medical care; (2) failing to train its employees on how to identify detainees with serious medical needs and how to obtain treatment for those needs: and (3) failing to staff the jail with a nurse or medical provider on evenings and weekends.

68. As a direct and proximate result of the County's breach of its duty of care, Michael was denied emergency medical treatment for his broken leg and insulin for his diabetes. He suffered damages, including physical and mental pain and suffering, disability, disfigurement, loss of enjoyment of life, past and future medical expenses, and lost wages.

WHEREFORE, Plaintiff request this Court enter judgment in favor of Plaintiff and against Defendants St. Francois County, Sheriff Daniel Bullock, Dr. Charles Pewitt, Dennis W. Smith, Defendants John Doe 1-5, Jane Doe, and Heather Katherine Smith LPN, jointly and severally, and award compensatory damages, punitive damages in such

**Complaint**
*Perry v. St. Francois County, et al.*
Page 12 of 12

sum as will serve to punish and deter Defendants and others from future conduct such as the described herein; for Plaintiffs' attorney fees and costs herein expended, and for such other and further relief as this Court deems just and proper in the premises.

    Respectfully submitted,
    Manley, Karraker & Karraker, P.C.

    /s/ Vonne L. Karraker
    Vonne L. Karraker, MBE #56335
    110 S. Jefferson Street
    P. O. Box 454
    Farmington, MO 63640
    Telephone:   573-756-6446
    Facsimile:   573-756-5151
    vonne@semoelderlaw.com

    Attorney for Plaintiffs